IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN BUCKLEY,           :    1:13-cv-2022
                                :
          Plaintiff,         :    Hon. John E. Jones III
                                :
          v.                :
                                :
STATE CORRECTIONAL INSTITUTION-:
PINE GROVE and PENNSYLVANIA    :
DEPARTMENT OF CORRECTIONS,    :
                                :
          Defendants.      :

## MEMORANDUM & ORDER

**January 6, 2014**

Plaintiff is appealing the determination of a Special Education Hearing

Officer that he is not entitled to certain remedies under the Individuals with

Disabilities Education Act ("IDEA"). *See* 20 U.S.C. § 1400 *et seq*. Presently

pending before this Court is his Motion to Submit Additional Evidence (Doc. 18),

filed on November 15, 2013, seeking to supplement the administrative record for

our review of the Hearing Officer's decision. For the reasons that follow, the

Court will allow Plaintiff to submit the additional evidence.

I.      **BACKGROUND**

Plaintiff is 20 years old (born October 8, 1993) and is presently

incarcerated at SCI-Pine Grove, a young adult offender institution. (Doc. 17-2, pp. 6, 7). He has been diagnosed with Attention Deficit Hyperactivity Disorder and an Emotional Disturbance (*id.* at p. 6), and has been identified as eligible for services under the IDEA. (*Id.* at p. 2). Before being incarcerated, Plaintiff's previous school district had developed an individualized education program ("IEP") for him, as required by statute. (*Id.* at p. 6); *see* 20 U.S.C. § 1414(d)(2)(A).

After his incarceration, on December 11, 2009, Plaintiff was sent to the Department of Corrections' Diagnostic and Classification Center, SCI-Camp Hill, and later was transferred to SCI-Pine Grove. (Doc. 17-2, p. 6). Since February 2, 2010, he has consistently been confined in SCI-Pine Grove's Restricted Housing Unit ("RHU"), which unit houses inmates who have had disciplinary problems. (*Id.* at pp. 6-7). RHU inmates spend 23 hours per day in their cells but may be removed, for example, to receive visitors, medical assistance, or counseling. (*Id.* at p. 7). Plaintiff has committed multiple assaults and other rule infractions, resulting in his continued, restrictive detention. (*Id.* at pp. 7-8).[1]

---

[1] Specifically, Plaintiff has engaged in assaultive behavior on at least four occasions at SCI-Pine Grove and has committed other serious misconduct on 25 separate occasions, such as threatening prison personnel or their families, destroying property, refusing to obey orders, and possessing contraband. (Doc. 17-2, p. 8).

In terms of education, two IEPs were developed for Plaintiff while at SCI-Pine Grove. (*Id.* at p. 9). The first, dated June 8, 2010, stated one goal, related to complying with rules and regulations, and contained the following modifications and specially designed instructions: Feedback, Monitoring, and Modification to materials when needed. (*Id.*). The second IEP, dated February 14, 2012, was substantially similar to the first. (*Id.*). Before implementing the second IEP, SCI-Pine Grove issued a reevaluation report ("RR"), which did not contain new assessment data but relied on a test previously administered at SCI-Camp Hill. (*Id.*). Throughout his time in the RHU, pursuant to the prison's policy for RHU inmates, Plaintiff received only in-cell study. (*Id.* at p. 8). Specifically, a teacher would provide "self study packets" to him through the tray aperture in his cell door. (*Id.*). Without opening the door, the teacher would remain outside of his cell to answer any questions, although he was not obligated to and did not complete the packets and seldom spoke with the teacher. (*Id.*). No additional educational services were provided to Plaintiff or any other student in the RHU. (*Id.* at p. 9).

Plaintiff filed a complaint, centrally challenging that he was being denied a free appropriate public education ("FAPE"). He demanded compensatory education for the denial of a FAPE, an order to provide a FAPE going forward,

and an independent educational evaluation ("IEE"). On March 22, 2013, a due process hearing was conducted, and a decision was rendered on May 1, 2013. (*Id.* at p. 1). Although the Hearing Officer found that the "[e]vidence overwhelmingly supports the conclusion that [Plaintiff's] IEPs did not comply with IDEA standards and that [Plaintiff] received *no* special education, specially designed instruction, or related services," (*id.* at p. 14 (emphasis in original)), he concluded that this failure did not violate the IDEA. The Hearing Officer noted that, for an incarcerated student such as Plaintiff, the IDEA permits a student's IEP to be "modif[ied] . . . if the State has demonstrated a bona fide security or compelling penological interest that cannot otherwise be accommodated," 20 U.S.C. § 1414(d)(7)(B), and stated that the security-interest exception exists "so prisons need not create or compound a particular, student-specific security risk in order to comply with the IDEA." (Doc. 17-2, p. 13). In determining that SCI-Pine Grove had demonstrated a bona fide security interest by a preponderance of the evidence, the Hearing Officer enumerated that Plaintiff was "a constant security risk," and that he was "assaultive, even while confined to the RHU, [managing] to commit assaults even with the RHU protocols in place." (*Id.*). The Hearing Officer elaborated that "[p]roviding a greater level of special education and related services [beyond cell study] would compel SCI-Pine Grove to frequently remove

4

[Plaintiff] from his cell, increasing the security risk." (*Id.*).

In rejecting Plaintiff's argument that SCI-Pine Grove did not modify his IEP but eliminated it entirely, the Hearing Officer reasoned that the security-interest exception exempts the State from providing an IEP that includes special education and related services and observed that Plaintiff possessed an IEP "[i]n a technical sense." (*Id.*).  He ultimately determined that, "as a matter of law, whenever [a local educational agency] is not required to provide an IEP, it is not required to provide a FAPE."  (*Id.* (footnote omitted)).

In light of the security-interest exception, the Hearing Officer denied Plaintiff's demand for compensatory education and a FAPE.  (*Id.* at p. 14).  However, he found that such exception does not negate SCI-Pine Grove's duty to evaluate Plaintiff in accordance with the IDEA.  (*Id.*).  Observing that the prison had failed to appropriately evaluate Plaintiff, the Hearing Officer ordered an IEE consisting of a Neuropsychological Evaluation, Functional Behavioral Assessment, and Psychiatric Evaluation.  (*Id.* at p. 16).

Plaintiff commenced the present action with the filing of a Complaint on July 29, 2013 (Doc. 1), appealing the decision of the Special Education Hearing Officer.  Plaintiff contends that the Hearing Officer erred in concluding that Plaintiff's IEP was appropriately modified under Section 1414(d)(7)(B) of the

IDEA and in reasoning that SCI-Pine Grove was not obligated to provide him with a FAPE. (*Id.* ¶ 4). Plaintiff centrally requests an award of compensatory education and a declaration that SCI-Pine Grove's actions violated the IDEA and the Americans with Disabilities Act. (*Id.* at pp. 21-22).

On November 15, 2013, Plaintiff filed a Motion to Submit Additional Evidence (Doc. 18) and later a supporting brief (Doc. 20), seeking to admit two documents to supplement the administrative record: the IEE performed by Dr. Steven Kachmar, ordered by the Due Process Hearing Officer and dated October 15, 2013, and Plaintiff's Inmate Cumulative Adjustment Records ("ICAR"), dated October 17, 2013. The IEE is a 42-page report purposed to establish "additional information related to [Plaintiff's] cognitive abilities, academic strengths and weaknesses, as well as his current social, emotional, and behavioral functioning." (Doc. 20-1, p. 2). The report describes that the psychologist conducted the evaluation on September 14, 2013, in a secure visiting area, through safety glass and by way of telephone. (*Id.* at p. 9). The evaluation includes a summary of Plaintiff's psychological and educational history; observations from the psychological/educational assessment; the results of that assessment; and recommended changes to Plaintiff's IEP to be considered by his IEP team. Of note, Dr. Kachmar recommended that Plaintiff's education be provided in a

separate and secure area of the institution, such as the one used to conduct the IEE, and opined that such instruction could be furnished while maintaining the safety of teachers, other inmates, and correctional officers. (*Id.* at p. 33).

Plaintiff's ICAR (Doc. 20-2) documents various interactions between Plaintiff and prison personnel occurring between January 8, 2013, and October 16, 2013. Relevantly, some of the entries note that Plaintiff was transported out of his cell (*e.g.*, in order to meet with a psychologist).

Defendants filed a Brief in Opposition (Doc. 21) on November 25, 2013, and Plaintiff submitted a Reply Brief (Doc. 23) on December 9, 2013. The Motion has thus been fully briefed and is ripe for our review.

## II.    LEGAL STANDARD

Under the IDEA, a party aggrieved by the factual findings and decision rendered after a due process hearing has the right to file a civil action. *See* 20 U.S.C. § 1415(i)(2)(A). In conducting such proceeding, the statute states that "the court – (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C).

In terms of the scope of review of the hearing officer's decision, the United

States Supreme Court has stated that district courts should not substitute their own view of educational policy for that of the agencies they review but, rather, should give "due weight" to the administrative proceedings. *Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982); *see also Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1034 (3d Cir. 1993). At the same time, however, the statutory directive to receive additional evidence and render a determination based on a preponderance of the evidence, granting relief as deemed appropriate, indicates that "a district court 'does not use the substantial evidence standard typically applied in the review of administrative agency decisions, but instead must decide independently whether the requirements of the IDEA are met.'" *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 757 (3d Cir. 1995) (quoting *Murray v. Montrose Cnty. Sch. Dist.*, 51 F.3d 921, 927 (10th Cir. 1995)) (internal quotation marks omitted).

As to the submission of additional evidence, "the question of what additional evidence to admit . . . should be left to the discretion of the trial court." *Susan N.*, 70 F.3d at 760. The Third Circuit has declined to explicitly interpret the contours of the "additional evidence" provision, *see id.* at 759, but has stated that a district court may consider additional evidence that is "relevant, non-cumulative, and useful in determining whether [the goals of the IDEA have] been reached for

the child involved." *Id.* at 760.[2]  In light of the statutorily-required deference to

the administrative proceedings, a court must determine whether the party

proffering the additional evidence has demonstrated a sufficient justification for

not submitting the evidence at the due process hearing.  *See Antoine M. v. Chester*

*Upland Sch. Dist.*, 420 F.Supp.2d 396, 403 (E.D. Pa. 2006) (citing *Susan N.*, 70

F.3d at 760).  The court may consider, among other things, whether:  (A) a

procedural bar existed to prevent the introduction of the evidence at the hearing;

(B) the evidence was purposely withheld below for strategic reasons; (C) the

introduction of the evidence here would prejudice the opposing party (*i.e.*, the

evidence would obstruct the adverse party from rebutting it); and (D) the

administration of justice would be impacted, for example, by the introduction of a

new theory of entitlement to relief.  *See id.*

## III.  DISCUSSION

Upon reviewing Plaintiff's proffer of additional evidence, the Court finds

such evidence to be useful, relevant, and non-cumulative.  The IEE is non-

cumulative of the evidence submitted at the due process hearing, especially in

---

[2]  Congress's primary goal in enacting the IDEA was to ensure "that each child with disabilities has access to a program that is tailored to his or her changing needs and designed to achieve educational progress."  *Susan N.*, 70 F.3d at 760 (citation and internal quotation marks omitted).

light of its recency, and is relevant to the appropriateness of Plaintiff's IEP. Further, it follows that Plaintiff did not intentionally withhold this evidence as the evaluation was ordered by the Hearing Officer, occurring after his decision.

The Court is cognizant of Defendants' concern that various of the opinions contained in the IEE bear on security, which issues are outside Dr. Kachmar's expertise as a psychologist. However, we observe that the vast majority of the IEE regards Plaintiff's psychoeducational status, an area in which Defendants agree Dr. Kachmar is qualified to testify, and note that if we deem Dr. Kachmar to be unqualified to provide certain opinions, we may disregard those opinions.[3] As in other district court decisions permitting the submission of an expert report as additional evidence, the Court will allow Defendants to submit their own expert report to alleviate any perceived prejudice. *See, e.g., Breanne C. v. Southern York Sch. Dist.*, Civ. No. 1:08-1526, 2010 WL 773945, at *2 (M.D. Pa. Feb. 26, 2010).

As to Plaintiff's ICAR, the Court finds this document helpful and germane in that it evidences various occasions when Plaintiff was successfully removed from his cell, and, here, Plaintiff is claiming that in-cell study alone is inadequate.

---

[3] Furthermore, as a general matter, it is the function of the Court in this proceeding to determine what weight additional evidence deserves, *see A.Y. v. Cumberland Valley Sch. Dist.*, 569 F.Supp.2d 496, 508 (M.D. Pa. 2008), and we note that there is ample record evidence of the security risks posed by Plaintiff. *See*, *e.g.*, *supra* note 1.

Notably, Defendants do not oppose the submission of this evidence so long as "they be permitted to make arguments as to why the transports and services reflected by these notes are distinguishable from transport and services for educational purposes." (Doc. 21, pp. 11-12). Certainly, Defendants may choose to advance such contentions.

## IV.   CONCLUSION

In sum, the Court finds that Plaintiff has sufficiently justified the introduction of the proffered, additional evidence, and will permit Defendants to submit an opposing expert report to mitigate any prejudice if they so elect.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.   Plaintiff's Motion  to Submit Additional Evidence (Doc. 18) is **GRANTED**.

2.   Defendants shall **SUBMIT** any expert report within thirty days of the date of this Order.

s/ John E. Jones III
John E. Jones III
United States District Judge